CRAWFORD & COMPANY, Fleetwood Homes of Florida, Plaintiffs-Appellees,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant-Appellant.

No. 99-2201.

United States Court of Appeals,

Eleventh Circuit.

Dec. 14, 2000.

Appeal from the United States District Court for the Middle District of Florida, (No. 98-00065-CV-ORL-18C), G. Kendall Sharp, Judge..

Before ANDERSON, Chief Judge, and DUBINA and HILL, Circuit Judges.

HILL, Circuit Judge:

The merits of this appeal present a novel issue of first impression under Title II, 42 U.S.C. § 405, of the Social Security Act (Act) and its applicable regulations, 20 C.F.R. §§ 404.932 and 416.1432.[1] The merits of the federal law issue presented in this case are juxtaposed against the backdrop of a state statute, Florida's Workers' Compensation Law, Fla. Stat. Ch. 440 (1994).

The Commissioner of Social Security (Commissioner) appeals from an eighteen-word handwritten order of the district court. By this squib notation, written in the left-hand margin of the report and recommendation (R&R) of the magistrate judge, the district court rejected the R&R, finding that the court had subject matter jurisdiction and that the plaintiff corporations could intervene as proper parties to an individual claimant's social security disability hearing.[2] For the following reasons, we reverse the decision of the district court.

## I. FACTUAL BACKGROUND

The underlying facts are not in issue and are pertinent only to set the stage for this appeal. In 1994, Deborah D. Scott, while employed by Fleetwood Homes of Florida (Fleetwood) as an assistant foreman, was

---

[1]Congress has given the Commissioner of Social Security (Commissioner) full power and authority to make regulations and establish procedures not inconsistent with the Act, which are necessary or appropriate to carry out the statute. *See* 42 U.S.C. § 405(a). Pursuant to his authority, the Commissioner has promulgated regulations establishing who may request a hearing and who may be a party to a hearing. *See* 20 C.F.R. §§ 404.932; 416.1432.

[2]Corporate plaintiffs are identified as the claimant's former employer and its workers' compensation insurance carrier.

injured on the job.[3]  In 1995, Scott filed an application for federal social security disability insurance benefits and an application for supplemental security income.[4]  She also filed a state claim in Florida for workers' compensation seeking permanent total disability (PTD) benefits.

## II. PROCEDURAL BACKGROUND

The underlying procedural background of this appeal is germane.  In 1996, Fleetwood, and Crawford & Company, Inc. (Crawford), described as Fleetwood's workers' compensation insurance carrier, filed a motion to intervene in Scott's social security disability case, pending before an Administrative Law Judge (ALJ).  They contended that their rights would be "adversely affected" by the decision of the ALJ making them proper parties to the hearing under 20 C.F.R. § 404.932(b).[5]  They argued that Scott might, without their presence in the federal forum, receive a finding of "catastrophic injury" from the ALJ. This ruling could in turn be relied upon by the Florida Judge of Compensation Claims (JCC) to support an award of PTD benefits in the state forum, payable by responsible parties Fleetwood and Crawford to Scott, perhaps for the rest of her life.[6]

Using a rationale supported by Fed.R.Civ.P. 24, the ALJ found that Fleetwood and Crawford were not proper parties to Scott's hearing, and denied their motion to intervene.[7]  He reasoned that, under Florida

---

[3]Scott fell through an open duct in the bathroom floor of a mobile home, injuring her left leg, pelvic area, back and neck.

[4]Scott's supplemental security income claim was subsequently denied.  This appeal only concerns her application for disability benefits.

[5]This regulation states in part that "[a]fter a request for a hearing is made, you [the claimant], the other parties to the initial, reconsidered, or revised determination, *and any other person who shows in writing that his or her rights may be adversely affected by the hearing,* are parties to the hearing."  20 C.F.R. § 404.932(b) (emphasis added); *see also* note 22 *supra* for the entire text.

[6]In defining PTD benefits, Florida law provides that "[o]nly a catastrophic injury as defined in s. 440.02 shall, in the absence of conclusive proof of a substantial earning capacity, constitute permanent total disability.  *Only claimants with catastrophic injuries are eligible for permanent total benefits.  In no other case may permanent total disability be awarded.*"  Fla. Stats. § 440.15(b)(1994)(emphasis added).

Turning to § 440.02(37)(f), applicable for purposes of this appeal, "Catastrophic injury" means "[a]ny other injury *that would otherwise qualify under this chapter of a nature and severity that would qualify an employee to receive disability income benefits under Title II* [42 U.S.C. § 401 *et seq.*] ... of the federal Social Security Act as the Social Security Act existed on July 1, 1992, without regard to any time limitations provided under that act."  Fla. Stats. § 440.02(37)(f)(1994) (emphasis added).

[7]Other reasons offered by the ALJ were:  that Fleetwood and Crawford had no interest in Scott's federal case;  that there was no question of law or fact in common between them and Scott's federal case;  that entitlement to coverage under federal law was dissimilar to coverage under the state statute (*i.e.,*

law, it was not mandatory, only discretionary, for a JCC to consider a decision by an ALJ. Therefore the outcome of Scott's federal case was not legally binding, nor necessarily even considered, in her state case. The ALJ concluded that Fleetwood and Crawford would have an opportunity to protect their interest in Scott's state case; this was their sole remedy.

Fleetwood and Crawford then filed its first petition in district court challenging the ALJ ruling. The magistrate judge dismissed their petition for lack of jurisdiction on the basis that there was no final decision to review.[8] Upon motion for reconsideration, the magistrate judge reconfirmed its original disposition, granting Fleetwood and Crawford leave to seek review by the Appeals Council of the Social Security Administration (SSA) in order to exhaust their administrative remedies and to obtain a final decision of the Commissioner.

So Fleetwood and Crawford filed a petition for review with the Appeals Council. Finding that Fleetwood and Crawford had "not claimed any benefits or other rights provided under Title II or XVI of the Act and ha[d] not established that such rights would be adversely affected," the Appeals Council dismissed their request for review "because they [were] not a proper party" under the regulations. *See* 20 C.F.R. §§ 404.932; 416.1432.[9]

Now armed with a final decision, Fleetwood and Crawford returned to district court with a second petition for review pursuant to 42 U.S.C. § 405(g).[10] The Commissioner filed a motion to dismiss the petition for lack of standing and lack of subject matter jurisdiction. The magistrate judge recommended that the motion be granted on the basis that § 405(g) did not confer jurisdiction upon the court.

---

federal disability must be total, while state disability could be permanent or temporary, permanent or partial); and that Scott's privilege to have her medical records kept confidential would be breached by Fleetwood and Crawford's tender of such records in her federal case.

[8]All parties consented to a final disposition before a United States Magistrate Judge.

[9]The Appeals Council noted that Fleetwood and Crawford were not Scott's appointed representative; that, with respect to benefits, their rights were not adversely affected by the decision of the ALJ; that they were not a party to the ALJ decision; and that they would not be adversely affected by any decision the Appeals Council might make.

[10]Section 405(g), entitled "Judicial review" provides in pertinent part: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... Such action shall be brought in the district court of the United States...."

Citing § 405(b)(1)[11], he stated:

> Petitioners are corporations, not individuals.  Congress has taken great care to specifically name each individual who may seek an administrative determination of entitlement to disability benefits ... Because Congress limited benefit determinations to individuals ... Congress had no need to allow anyone other than an individual to seek judicial review of the Commissioner's final decision ... [It] did not allow corporations to seek judicial review from the Commissioner's decision that [Fleetwood and Crawford] are not proper parties to a hearing because Congress envisioned only listed individuals as requesting, or intervening in, hearings.

In a footnote, the magistrate judge noted that, from examining the record, there was no indication: (1) that the Florida JCC would be bound to follow the determination of the Commissioner, nor (2) that the Florida JCC would not allow Fleetwood and Crawford an opportunity to present their evidence in the state workers' compensation proceeding.

The district court rejected the R&R by this handwritten notation:  "The recommendation is rejected.  The Court finds that plaintiffs are proper parties and therefore have subject matter jurisdiction."  In response to the Commissioner's motion to clarify, the district court again made a handwritten notation across the top of the motion:  "Granted.  The Court's decision was based on the memo in opposition to the magistrate R&R [filed by Fleetwood and Crawford and treated as a motion for rehearing]."  Six weeks later, the ALJ determined that Scott was entitled to social security disability benefits.  The district court stamp-granted Fleetwood and Crawford's motion for final judgment, with the hand-written notation across the top:  "*Final Judgment*.  Petitioners are proper parties."  The Commissioner filed this appeal.

### III. ISSUES ON APPEAL

Three issues are presented on appeal:

A. Whether the "Final Judgment" of the district court finding that Fleetwood and Crawford are proper parties to Scott's social security disability hearing is immediately appealable?

B. If the order is immediately appealable and this court has jurisdiction, whether this appeal is moot, as Scott's state workers' compensation proceeding is now final?

---

[11]Section 405(b)(1) provides in relevant part:

> ... Upon request by *any such individual or upon request by a wife, divorced wife, widow, surviving divorced wife, surviving divorced mother, surviving divorced father, husband, divorced husband, widower, surviving divorced husband, child, or parent who makes a showing in writing that his or her rights may be prejudiced by any decision* the Commissioner of Social Security has rendered, the Commissioner shall give such applicant and such other individual reasonable notice and opportunity for a hearing with respect to such decision....

42 U.S.C. § 405(b)(1)(emphasis added); *see also* 20 C.F.R. §§ 404.932(b);  416.1432(b).

C. If this appeal is not moot, whether Fleetwood and Crawford are proper parties under the Act and applicable regulations to Scott's social security disability hearing before the ALJ?

## IV. STANDARD OF REVIEW

The decisions by the district court that subject matter jurisdiction was present, 42 U.S.C. § 405(g), to review the final decision of the Commissioner that Fleetwood and Crawford were not proper parties to Scott's social security disability hearing, 42 U.S.C. § 401(b)(1), raise pure questions of law that we review *de novo. Federal Reserve Bank of Atlanta v. Thomas,* 220 F.3d 1235, 1238 (11th Cir.2000).

## V. DISCUSSION

A.     Jurisdiction

We raised the issue of jurisdiction *sua sponte.* The parties responded in supplemental briefings.

The jurisdiction of this court in social security proceedings is limited to final orders of the district courts. 28 U.S.C. § 1291. A final order is one that "ends the litigation on the merits and leaves nothing for the court to do but execute its judgment." *Huie v. Bowen,* 788 F.2d 698, 701 (11th Cir.1986) (citations omitted). Generally, an order of a district court remanding a case to the Commissioner is not an appealable order.[12] *Id.* However the Supreme Court has held a judgment of the district court that reverses the decision of the Commissioner and orders a remand to the SSA is final and appealable under § 1291 when entered under the fourth sentence of § 405(g).[13] *Forney v. Apfel,* 524 U.S. 266, 118 S.Ct. 1984, 1986-87, 141 L.Ed.2d 269 (1998).

The Commissioner argues that jurisdiction is present under the fourth sentence of § 405(g). Fleetwood and Crawford argue it is not, although both sides appear to agree that this is an jurisdictional issue of first impression.[14] We need not address whether jurisdiction is present under § 405(g), as we conclude,

[12]The SSA was established in 1994 as "an independent agency in the executive branch," 42 U.S.C. § 901(a), "to administer the old-age, survivors, and disability insurance program[s]," 42 U.S.C. § 901(b). Previously, the SSA had administered these programs under the auspices of the Department of Health and Human Services. 42 U.S.C. § 901 *note.* Hence, some of the older cases refer to the Secretary of the Department of Health and Human Services instead of the Commissioner of the SSA. *See Biddle v. Heckler,* 721 F.2d 1321 (11th Cir.1983).

[13]The fourth sentence of § 405(g) provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

[14]Somewhat incompatible with their jurisdictional position, however, Fleetwood and Crawford agree with the Commissioner that the merits of their claim present an important question as "there is a vital need for this Court to address whether employers and carriers can intervene in an applicant's social security hearing, and the extent to which employers and carriers can participate in the applicant's social security

after reviewing the briefs of the parties, that the precedential authority of this circuit establishes that the judgment of the district court, even if not "final" *per se,* is reviewable under the collateral order doctrine of *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *Huie,* 788 F.2d at 701-02. "[T]he *Cohen* doctrine allows appeals to be taken from orders that (1) finally determine claims entirely collateral to and separable from the substance of other claims in the action, (2) require review because they present significant, unsettled questions, and (3) cannot be reviewed effectively once the case is finally decided." *Id.*

This appeal satisfies all three prongs of *Cohen*. First, the issue of whether third-party corporations not claiming benefits may participate in an individual claimant's disability hearing is a structural matter unrelated to the merits of the individual's disability claim. *Id.* Second, the issue is important as the broad mandate of the district court would create a fundamental change in the social security disability hearing and would be unprecedented in nature. *Id.* Third, the issue would be otherwise unreviewable.[15] *Id.* We therefore find jurisdiction present under the *Cohen* collateral order doctrine.

B.      Mootness

We now turn to the issue of mootness. Again *sua sponte,* during oral argument the court inquired as to whether or not this appeal was now moot, as Scott's workers' compensation claim had concluded. The parties also addressed the issue in supplemental briefings.

As we know, Scott filed a claim under Florida workers' compensation law seeking PTD benefits. The JCC in the state proceeding awarded PTD benefits to Scott. Fleetwood and Crawford appealed the decision of the JCC to the Florida First District Court of Appeal. On June 9, 2000, the First District Court of Appeal affirmed the order of the JCC per curiam without opinion. *Crawford & Co. v. Scott,* 767 So.2d 1205 (Fla. 1st DCA 2000).

The decision by the Florida district court does not moot the merits of this appeal as Florida law provides for modification of a JCC order. Under Fla. Stat. § 440.28 (1994), at any time prior to two years

---

hearing."

[15]If the remand decision is to award benefits, the procedural issue is moot. However, if the remand decision is to deny benefits, Scott could appeal on the basis of both the merits and the procedural issue. The review of an important issue of first impression should not depend upon the discretion of a private party. *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 896-97 n. 11, 47 L.Ed.2d 18 (1976)(where, in a social security context, the Supreme Court stated that "the core principle that statutorily created finality requirements should, if possible, be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered").

after the date of the last payment of compensation made pursuant to the compensation order a party seeks to modify, on the ground of a change in condition or because of a mistake in a determination of fact, a JCC may review a compensation case and issue a new compensation order which may terminate, continue, reinstate, increase or decrease the award.[16] Also, Scott's social security disability case is still in active status, as the ALJ recommended that she be reevaluated in one year (although this time has now passed) and referred for vocational rehabilitation services. 20 C.F.R. §§ 416.1710; 1715; and 404.2101. Hence the claim of Fleetwood and Crawford is not moot and the issue of intervention continues.

C.      The Merits of the Appeal

We now turn to the underlying merits of the case. The net effect of the district court order will be to require Scott's case to be reopened by the ALJ, in order to conduct a second hearing. The Commissioner contends that this rehearing will be adversarial in nature, with Fleetwood and Crawford as opposing parties to Scott. Fleetwood and Crawford argue that although their rights are adversely affected by Scott's social security disability hearing, their intervention would not render the hearing adversarial. On the contrary, they claim it would develop and supplement the record in order to promote fair and objective evaluation of claims, and efficient determination of eligibility for benefits.[17]

Social security disability proceedings are inquisitorial rather than adversarial. *See Sims v. Apfel,* 530 U.S. 103, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000) (citing *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). The SSA is perhaps the best example of an agency that is not based to a significant extent on the judicial model of decisionmaking. It has replaced normal adversary procedure with an investigatory model, where it is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits; review by the Appeals Council is similarly broad. *Id.*[18] The regulations

---

[16]The Commissioner argues that Fleetwood and Crawford's claim of a right to intervene has been rendered moot for lack of injury. *See Atlanta Gas Light Co. v. F.E.R.C.,* 140 F.3d 1392, 1401 (11th Cir.1998)(where "[a] case becomes moot 'when ... the parties lack a legally cognizable interest in the outcome' ").

[17]Here, Fleetwood and Crawford assert, that there is no other party to Scott's hearing that can adequately represent their viewpoint with regard to conflicting medical evidence. They contend that all employers and carriers should be allowed to participate in the discovery process by presenting medical records, surveillance evidence, rehabilitation reports, depositions of treating physicians, employer documents regarding job availability, and vocational evaluations of an individual's ability to return to gainful employment.

[18]Intervention, claims the Commissioner, would greatly deserve the average disability claimant, typically unrepresented by counsel, facing and confronting presumably well-represented corporate adversaries at this juncture.

also make the nature of the SSA proceedings quite clear. They expressly provide that the SSA "conducts the administrative review process in an informal, nonadversary manner." 20 C.F.R. § 404.900(b). The Commissioner has no representative before the ALJ to oppose the claim for benefits; neither is there is any indication that he opposes claimants before the Appeals Council. *Sims,* 120 S.Ct. at 2085 (citing Dubin, *Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings,* 97 Colum.L.Rev. 1289, 1301-05, 1325-29 (1997)).

Next, the Commissioner contends that the statute and regulations should be construed to limit participation to individuals and not corporate entities and that his reasonable interpretation is entitled to deference. *See Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 114 S.Ct. 2381, 2386-87, 129 L.Ed.2d 405 (1994). As the regulations speak in terms "you" and "other parties" in referring to individual human beings, the term "any other person" should be similarly construed. This conclusion is buttressed by the use of the terms "his" and "her." *See City of Delray Beach, Fla. v. Agricultural Ins. Co.,* 85 F.3d 1527, 1534 (11th Cir.1996)(applying the doctrine of statutory construction "ejusem generis").

Fleetwood and Crawford assert that the Commissioner's statutory interpretation of the word "individual" to mean only human beings and not businesses is incorrect. They claim they have a right to be a party in Scott's hearing because they are "any other person who shows ... that his or her rights may be adversely affected by the hearing, *are* parties to the hearing." 20 C.F.R. § 404.932(b) (emphasis added).[19]

Under the Act, the statutory provisions governing hearings in disability cases contemplate participation by only individuals with a stake in obtaining benefits.[20] The statute speaks in terms of

---

[19]Fleetwood and Crawford rely on two decisions interpreting the word "individual" in a § 405(g) context. In *Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), a class action was brought against the Secretary of the Department of Health, Education and Welfare to recoup insurance overpayments by decreasing future benefits. The Secretary argued class relief was inappropriate using the definition of "individual" under § 405(g). The Supreme Court disagreed with this narrow interpretation. Similarly, in *Attorney Registration and Disciplinary Comm'n v. Schweiker,* 715 F.2d 282 (7th Cir.1983), the Commission brought suit against the Secretary of Health and Human Services seeking a declaration that their employees were covered by social security or a refund. The Seventh Circuit held that the Commission was an "individual" within the meaning of § 405(g) entitled to judicial review of an administratively final decision. *Id.* at 289.

[20]Section 405(b)(1) provides:

> (b) *Administrative determination of entitlement to benefits; findings of fact; hearings; investigation; evidentiary hearings in reconsiderations of disability benefit terminations; subsequent applications*
>
> (1) The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter.

"individuals applying for a payment," "his or her rights," "such individual or upon request by a wife, divorced wife, widow...." Section 405(b)(1). The applicable regulations governing who may request a disability hearing are 20 C.F.R. §§ 404.923(a) and 416.1432(a).[21] The applicable regulations governing who are parties to a disability hearing are §§ 404.923(b) and 416.1432(b).[22] As corporate entities, it is clear that Fleetwood and Crawford are not the individuals or specified persons enumerated by the Act or regulations with a potential stake in the award of social security benefits to a particular claimant. As a result, under the law, they are not proper parties to Scott's federal hearing. *Id.*

---

> Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based. Upon request by any such individual or upon request by a wife, divorced wife, widow, surviving divorced wife, surviving divorced mother, surviving divorced father, husband, divorced husband, widower, surviving divorced husband, child, or parent who makes a showing in writing that his or her rights may be prejudiced by any decision the Commissioner of Social Security has rendered, the Commissioner shall give such applicant and such other individual reasonable notice and opportunity for a hearing with respect to such decision, and, if a hearing is held, shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse the Commissioner's findings of fact and such decision. Any such request with respect to such a decision must be filed within sixty days after notice of such decision is received by the individual making such request. The Commissioner of Social Security is further authorized, on the Commissioner's own motion, to hold such hearings and to conduct such investigations and other proceedings as the Commissioner may deem necessary or proper for the administration of this subchapter. In the course of any hearing, investigation, or other proceeding, the Commissioner may administer oaths and affirmations, examine witnesses, and receive evidence. Evidence may be received at any hearing before the Commissioner of Social Security even though inadmissible under rules of evidence applicable to court procedure.

[21]According to the regulations, the following may request a hearing before an ALJ:

> (a) *Who may request a hearing.* You may request a hearing if a hearing is available under § 404.930. In addition, *a person* who shows in writing that *his or her rights may be adversely affected* by the decision may request a hearing.

20 C.F.R. §§ 404.932(a); 416.1432(a)(emphasis added).

[22]According to the regulations, the following may be parties to a hearing before an ALJ:

> (b) *Who are parties to a hearing.* After a request for a hearing is made, you, the other parties to the initial, reconsidered, or revised determination, *and any other person who shows in writing that his or her rights may be adversely affected by the hearing,* are parties to the hearing. In addition, any other person may be made a party to the hearing if his or her rights may be adversely affected by the decision, and the administrative law judge notifies the person to appear at the hearing or to present evidence supporting his or her interest.

20 C.F.R. §§ 404.932(b); 416.1432(b)(emphasis added).

Fleetwood and Crawford suggest, that in 1994, when the Florida Legislature changed the standard for awarding PTD benefits to include "any [catastrophic] injury that would otherwise qualify ... of a nature and severity that would qualify an employee to receive disability income benefits under Title II," Fla. Stats. § 440.02(37)(f), employers and insurance carriers alike recognized the importance of the claimant's award or denial of social security benefits by an ALJ. It was then, Fleetwood and Crawford contend, that employers and carriers began filing motions to intervene with ALJs.[23]

The JCC in this case held that she had "considered whether the Claimant has sustained a catastrophic injury which would entitle her to receive disability income benefits under Title II or Supplemental security Income Benefits under Title XVI Social Security Act...." She found that "the Claimant's injuries ... are of such a nature and severity that they would qualify this Claimant to receive disability income benefits [under either Title]." In her opinion, the JCC makes no reference to the prior decision of the ALJ to award benefits. It appears clear from the record that the JCC applied social security standards yet made her own independent findings. This is in accordance with Florida case law.[24] Most recently, in *Florida Distillers v. Rudd,* 751 So.2d 754 (Fla. 1st DCA 2000), the court stated:

> Nevertheless, despite the statutory intent to render PTD status comparable to disability under the Social Security Act, we have been cited to no requirement in chapter 440 that a JCC is bound by the [grant or] denial of a claim for social security disability benefits. The legislature could have easily included such a requirement when chapter 440 was substantially amended as a result of chapter 93-415, Laws of Florida, but it did not do so. Furthermore, given the fact that the evidence may vary between a workers' compensation proceeding and a proceeding on a claim for social security disability benefits through no fault of the claimant, it would be unjust to view federal disability determinations as carrying binding precedential authority in a proceeding under chapter 440, Florida Statutes.

*Id.* at 756-757.

---

[23]They claim that "[virtually all of the Motions to Intervene filed by employer and carriers have either been ignored or simply discarded by the Administrative Law Judges.]"

[24]*See also Alachua County Adult Detention Center v. Alford,* 727 So.2d 388, 391 (Fla. 1st DCA 1999)(where the court upheld the refusal of the JCC to stay payment of PTD benefits pending review of an application for modification, based on the fact that the SSA had reached a different conclusion, as the employer/carrier made no showing that the Florida legislature intended to delegate the authority of the JCC to the SSA); *Union Camp Corp. v. Hurst,* 696 So.2d 873, 876 (Fla. 1st DCA 1997) ("[while receipt of social security disability benefits may be relevant to a determination of entitlement to PTD benefits under the definition of catastrophic injury ... in section 440.02(34)(f)[sic] ..., claimant's receipt of SSD benefits alone is not sufficient to qualify him for PTD benefits. The claimant must still prove every element of his claim, including ... a causal connection between his compensable injury and the inability to earn which has entitled him to receive SSD benefits.]"); *Bob Wilson Dodge v. Mohammed,* 692 So.2d 287, 288 (Fla. 1st DCA 1997)(claimant still has "burden of proving entitlement to PTD benefits" and could not rely "solely on fact that he had been awarded social security disability benefits to prove that he was permanently totally disabled").

Evaluating credibility of witnesses, conflicts of evidence, weight to be given testimony, physical evidence, and expertise, all to determine where the preponderance lies is no small task. Those charged with doing so ought not be tempted to abdicate the responsibility to the conclusions of another. Traditionally the temptation has been disallowed. On a retrial, the jury is not told the verdict of the first jury; an investigator, appearing as a trial witness, is rarely permitted to testify that he or she believes one side or another has the better case. *See e.g.,* 1 John W. Strong *et al., McCormick on Evidence* § 12 at 51 (5th ed.1999)(opinions on the ultimate issue); *Warren Petroleum Co. v. Thomasson,* 268 F.2d 5 (5th Cir.1959).

It appears that Florida has a different idea. In that enlightened jurisdiction Scott can assist the JCC in determining PTD benefits by putting in evidence the findings of the ALJ, another factfinder in another tribunal. What the ALJ does with its findings does not "cost" Fleetwood and Crawford anything. It is what the State of Florida allows the JCC, in the state proceeding, to do with those findings that concerns them.

In this issue of first impression, Fleetwood and Crawford seek from our court an unprecedented broad order, revamping social security hearings, transforming a non-adversarial, inquisitorial system, established by Congress under federal law to determine eligibility for disability benefits. Even if we had the power to do so, we respectfully decline. If there is any relief to be found by Fleetwood and Crawford at all, their remedy lies, not at the federal judicial or legislative level, but at the state level, in the reform of the Florida Workers' Compensation Law by the Florida Legislature.

## VI. CONCLUSION

The decision of the district court is REVERSED.