833 F.2d 288
 93 A.L.R.Fed. 151, 19 Soc.Sec.Rep.Ser. 576,
Unempl.Ins.Rep. CCH 17,688
 Eugene PICKETT, on behalf of himself and persons similarly
situated, Plaintiff- Appellee,
v.
Otis R. BOWEN, Secretary of the Department of Health and
Human Services, Defendant-Appellant.
 No. 86-5463.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 4, 1987.
 
 Leon B. Kellner, U.S. Atty., Samuel D. Armstrong, Asst. U.S. Atty., Miami, Fla., Jason R. Baron, Office of the General Counsel, Social Sec. Div., Dept. Health & Human Services, Baltimore, Md., for defendant-appellant.
 Paulette Ettachild, Legal Services of Greater Miami, Inc., Miami, Fla., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before JOHNSON and EDMONDSON, Circuit Judges, and HOFFMAN*, Senior District Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 Otis Bowen, the Secretary of Health and Human Services, appeals the order by the United States District Court for the Southern District of Florida that "closed period" claimants[1] are members of the certified class and therefore are entitled to the benefits of the district court's earlier order of remand. We affirm.
 
 I.
 
 2
 After this Court's pronouncement in Simpson v. Schweiker, 691 F.2d 966 (11th Cir.1982), that the Secretary of Health and Human Services must apply the "medical improvement" standard before terminating disability benefits, the Secretary engaged in a policy of nonacquiescence. This class action sought to require the Secretary's compliance with Schweiker. The district court certified the class as
 
 
 3
 [a]ll residents of the State of Florida whose disability benefits under Title II and Title XVI of the Social Security Act are, have been, or will be terminated without substantial medical improvement as required by Simpson v. Schweiker, 691 F.2d 966 (11th Cir.1982) and whose claims for disability were administratively active on or after November 12, 1982. This class excludes recipients whose benefits are or will be terminated upon proof of any of the following: a. Return to substantial gainful employment; b. Whereabouts unknown; c. Failure to cooperate; d. Admission of recovery; e. Financial ineligibility.
 
 
 4
 After certification, Congress passed the 1984 Social Security Disability Amendments, Pub.L. No. 98-460, adopting the "medical improvement" standard as the standard of review for the termination of disability benefits and requiring that all claims in certified class actions be remanded to the Secretary. In addition, Congress provided that upon notification certified class members could have their benefits reinstated pending a new determination by the Secretary.
 
 
 5
 The district court remanded the claims, but retained jurisdiction. Pickett v. Heckler, 10 Soc.Sec.Law Rep. 451, 608 F.Supp. 841 (S.D.Fla.1985). The Secretary began excluding "closed period" claimants from the redetermination. Upon a motion by the appellees, the district court issued an order expressly stating that "closed period" claimants were part of the certified class, enjoying all benefits of the earlier remand order. Consequently, the Secretary was to reexamine their terminations under the "medical improvement" standard, and continue to pay them benefits pending the redetermination. The Secretary filed this timely appeal.
 
 II.
 
 6
 We first examine whether we have jurisdiction. "Generally, an order of a district court remanding a case to the Secretary of Health and Human Services for further consideration is not an appealable order." Huie v. Bowen, 13 Soc.Sec.Law Rep. 256, 788 F.2d 698, 701 (11th Cir.1986). Huie, however, held that, although the remand was not a final order, jurisdiction existed because the remand was an appealable collateral order under Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). "The Cohen doctrine allows appeals to be taken from orders that (1) finally determine claims entirely collateral to and separable from the substance of other claims in the action, (2) require review because they present significant, unsettled questions, and (3) cannot be reviewed effectively once the case is finally decided." Huie, 788 F.2d at 702.
 
 
 7
 Huie provides the framework for holding that jurisdiction exists in the present case. Huie involved a situation where, pursuant to the Disability Amendments, this Court and the district court remanded pending cases to the Secretary. In addition, the district court ordered that the Secretary reinstate the claimants' benefits from the date of termination. The Secretary appealed the district court's award of retroactive benefits. Under the first Cohen prong, this Court noted in Huie that "[t]he issue of whether a court may order the Secretary to pay retroactive benefits prior to the determination of whether the claimants were improperly taken off the rolls is separable from the issue of whether the claimants have experienced a medical improvement." Id. at 703. Similarly here, the issue of whether "closed period" claimants are entitled to redetermination and benefits pending redetermination is separable from the issue of whether the claimants have experienced a medical improvement.
 
 
 8
 Under the second Cohen prong, this Court recognized in Huie that "this case presents an unsettled question which requires that we make a proper determination involving significant interests of the Secretary in protecting the public fisc. Likewise, the case involves important interests of the claimants in financial well-being and, perhaps, survival." Id. Similar considerations apply here as well, especially because the present case provides a question of first impression in determining whether Congress intended that the Disability Amendments apply to "closed period" claimants.
 
 
 9
 Under the third Cohen prong, this Court reasoned in Huie that "once this case is remanded and the Secretary pays benefits, the fundamental legal issues of whether payments are permitted prior to a determination of the disability claim under the Act will become moot. Thus, review at a later time will be meaningless." Id. Similar reasoning governs here. The Secretary argues that the claims of "closed period" class members are not entitled to remand, redetermination, and benefits pending redetermination. By not hearing the Secretary's appeal now, the Secretary would have to redetermine the claim and pay benefits pending redetermination, thereby rendering his present objection moot and judicial review meaningless.
 
 III.
 
 10
 This appeal presents a question of first impression in this Circuit: Are "closed period" claimants entitled to the relief and benefits created by Congress in the Disability Amendments? The Secretary argues that a reading of the statutory language and an examination of the legislative history reveal that Congress did not intend that the Disability Amendments apply to "closed period" claimants. In light of the Amendment's broad remedial purposes, we hold that Congress intended a broad reading of the statutory language. Consequently, we affirm the district court, concluding that "closed period" claimants are entitled to a redetermination under the "medical improvement" standard, benefits pending redetermination, and any other benefits of the district court's order.
 
 
 11
 We begin with an examination of the statutory language. The Disability Amendments apply to "actions relating to medical improvement" pending before courts on the date Congress enacted the Disability Amendments. Such actions must be remanded to the Secretary for redetermination based upon the "medical improvement" standard. Pub.L. No. 98-460, Sec. 2(d)(2), 98 Stat. 1794, 1797-98 (codified at 42 U.S.C.A. Sec. 423 note). The Secretary argues that "closed period" claims are not "actions relating to medical improvement," defined as follows by Section 2(d)(6) of the Amendments:
 
 
 12
 [T]he term "action relating to medical improvement" means an action raising the issue of whether an individual who has had his entitlement to benefits ... based on disability terminated (or period of disability ended) should not have had such entitlement terminated (or period of disability ended) without consideration of whether there has been medical improvement in the condition of such individual (or another individual on whose disability such entitlement is based) since the time of a prior determination that the individual was under a disability.
 
 
 13
 98 Stat. at 1798 (emphasis added).
 
 
 14
 The Secretary, seizing upon the emphasized language of Section 2(d)(6), argues:
 
 
 15
 This definition plainly requires two elements: 1) that there be a decision, later in time from the decision which originally awarded benefits; and 2) that the action before the court raise the issue of the propriety of that later decision which terminated the individual's continued receipt of disability benefits awarded in the earlier decision. As we have emphasized throughout, a closed period case does not involve an earlier and a later decision; it involves only one decision. Accordingly, a closed period case is not an "action relating to medical improvement" and is, for this reason, not a case that fits within the class definition.
 
 
 16
 Appellant's Brief at 10-11 (footnote omitted).
 
 
 17
 We do not share the Secretary's narrow reading of Section 2(d)(6)'s language. The Secretary's argument is flawed because, even in a closed period case, the ALJ can only determine that a person is no longer entitled to benefits "since the time [the ALJ made] a prior determination that the individual was under a disability." Termination of benefits cannot become an issue until after there has been a determination of entitlement to benefits (i.e., the claimant is under a disability). The example in footnote one illustrates that Section 2(d)(6) applies to closed period cases. There, the ALJ first determined that the claimant was under a disability in January 1982. The ALJ, having made "a prior determination that the individual was under a disability" by focusing on the evidence present in January 1982, then examined whether the January 1982 disability continues. The ALJ's examination necessarily takes place "since the time of a prior determination that the individual was under a disability." Consequently, the Disability Amendments require that the ALJ examine whether the claimant has experienced medical improvement since January 1982.[2]
 
 
 18
 Our conclusion finds support in the Amendments' legislative history. We discern from the legislative history that Congress was concerned with all determinations resulting in a loss of benefits eligibility:
 
 
 19
 The overall purpose of the bill is, first, to clarify statutory guidelines for the determination process to insure that no beneficiary loses eligibility for benefits as a result of careless or arbitrary decision-making by the Federal government. Second, the bill is intended to provide a more humane and understandable application and appeal process for disability applicants and beneficiaries appealing termination of their benefits.
 
 
 20
 H.R.Rep. No. 618, 98th Cong., 2d Sess. 2, reprinted in 1984 U.S.Code Cong. & Admin.News 3038, 3039.
 
 
 21
 In addition, the House Report stated that the House Ways and Means Committee
 
 
 22
 is deeply concerned about the erosion of public faith and confidence in the social security disability programs.... The guidelines established in this bill appear to the committee to be the best way to restore confidence in the program. The committee believes it is crucial to continued public support for the social security program as a whole for the public to understand that the program will be administered according to the law rather than by constantly shifting and changing arbitrary policies.
 
 
 23
 Id. at 2-3, reprinted in 1984 U.S.Code Cong. & Admin.News at 3039-40. Broad interpretation of congressional policy is also evident from the following House Report passage:
 
 
 24
 The committee wishes to reaffirm that the purpose of the disability insurance program is to provide benefits only for those who are unable to work. It is therefore completely appropriate for the Social Security Administration to periodically review beneficiaries who are not deemed to be permanently disabled, in order to ensure that the law is being carried out. However, the committee is concerned that the consideration of eligibility for disability benefits be conducted using criteria that clearly reflect the intent of Congress that all those who are unable to work receive benefits. It is of particular concern that the Social Security Administration has been criticized for basing terminations of benefits solely and erroneously on the judgment that the person's medical impairment is "slight," according to very strict criteria, and is therefore not disabling, without making any further evaluation of the person's ability to work.
 
 
 25
 Id. at 7 (emphasis added), reprinted in 1984 U.S.Code Cong. & Admin.News at 3044-45. These goals apply equally to "closed period" and non-"closed period" claimants. Consequently, we discern from the broad remedial policies underlying the Disability Amendments that Congress intended to reach "closed period" claimants.[3]IV.
 
 
 26
 Congress enacted the Disability Amendments to ensure that those who deserve disability benefits receive them. Congress also sought to ensure that termination of benefits occurs only after reference to a "medical improvement." Because the Secretary's narrow reading of the statutory language finds no support in that language and instead would frustrate the broad remedial Congressional policies, we AFFIRM the district court.[4]
 
 
 
 *
 Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 In a "closed period" case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision. Typically, both the disability decision and the cessation decision are rendered in the same document
 The following is an example of a "closed period" case. An individual who had never previously received benefits filed an application for benefits in January 1982, alleging disability because of injuries received in an automobile accident. The application was denied initially and on reconsideration. The claimant appealed to an administrative law judge (ALJ), who issued a decision in December 1983 based upon the evidence of record at that time that the claimant had been disabled from January 1982 through June 1983 because of his injuries, but was not disabled after that date (June 1983). Thus, the findings of disability and eligibility, and the findings of cessation of disability and termination occur in the same document. The claimant in the "closed period" case would receive a lump-sum check for the period of disability, but would not be found entitled to current monthly benefits.
 
 
 [2]
 The Secretary's current procedure bolsters this interpretation. Since December 6, 1985, the Secretary requires that the "medical improvement" standard passed by Congress be applied to "closed period" claims. The "onset date" (i.e., the date disability was determined to exist) is used as the comparison point with the present to determine if "medical improvement" has occurred
 The Secretary also argues that a "closed period" case does not involve a "recipient of benefits" because a claimant receives a one-shot, lump-sum award. The Secretary's emphasis on the lump-sum nature of the award is misplaced. The lump-sum award simply represents accrued disability benefits. The critical determination is that a person was entitled to benefits; the focus is not on the manner of payment.
 In addition, the Secretary cites the statutory language in Section 2(a) of the Disability Amendments (now 42 U.S.C.A. Sec. 423(f)) to support his argument. We note that our holding harmonizes with the language in that provision as well.
 
 
 [3]
 The Secretary argues that the Disability Amendments' legislative history supports his argument. Specifically, the Secretary argues that in enacting Section 423(f) Congress was reacting to the implementation of a 1980 amendment (42 U.S.C. Sec. 421(i)). Section 421(i) required a review at least every three years of all persons receiving disability benefits but not permanently disabled to determine their continuing disability. Numerous terminations had occurred since the Secretary sped up implementation in 1981, and Congress expressed concern that some individuals were terminated without a showing of medical improvement
 The Secretary is correct that terminations as part of continuing disability investigations were of great concern to Congress. But the Secretary's argument too narrowly reads Congress's intent. The Secretary's argument is that Congress's concern about the fairness of continuing disability investigations excludes concern about "closed period" recipients. "Closed period" cases involve only a small portion of all disability claims (less than one percent based on the class make-up in the present case). It seems incongruous that Congress would intend to exclude "closed period" claimants without expressly specifying that intent, especially because, as set forth in the text, Congress intended these amendments as broad remedial legislation.
 
 
 [4]
 We note that the Eighth Circuit has also addressed the issue presented by the present appeal. The court, after initially remanding a case involving a "closed period" claimant, Camp v. Heckler, 10 Soc.Sec.Law Rep. 138, 765 F.2d 729 (8th Cir.1985), vacated its opinion and concluded that "closed period" claims are not covered by the Amendments. Camp v. Heckler, 12 Soc.Sec.Law Rep. 112, 780 F.2d 721 (8th Cir.1986). The Court rested its holding upon the definition of "action relating to medical improvement":
 Section 2(d)(6) of the Reform Act, which defines the term "action relating to medical improvement," contemplates that mandatory remand will take place only in cases "of a prior determination that the individual was under a disability." This reference to a "prior determination," we think, is more naturally read as referring to a previous decision in favor of disability, followed by the claimant's receipt of benefits, further followed by a new proceeding resulting in cessation or termination on the ground of medical improvement.
 Id. at 722. We decline to follow the Camp decision because the Eighth Circuit ignored the broad policies Congress sought to advance when passing the Disability Amendments and read Section 2(d)(6) too narrowly.
 The Secretary also cites Taylor v. Heckler, 10 Soc.Sec.Law Rep. 315, 769 F.2d 201 (4th Cir.1985). Taylor, however, does not apply to the present case because remand occurred to determine if disability ever existed. No doubt exists in the present case that for some period the "closed period" claimants were entitled to benefits.
 We also note that the Ninth Circuit in an unpublished opinion affirmed the district court's order that "closed period" claimants are eligible for class membership. Lopez v. Bowen, No. 85-6478 (9th Cir. Apr. 16, 1987); see Lopez v. Bowen, 822 F.2d 61 (9th Cir.1987) (noting affirmance without published opinion). The Ninth Circuit, however, did not reach the issue of whether Congress intended for the Disability Amendments to reach "closed period" claimants. Instead, the Court, relying on a Social Security Administration circular, held that the Secretary had acquiesced to the district court's order. The Secretary has petitioned for rehearing. Although that SSA circular also references the present case, we believe the circular only requires the use of the "medical improvement" standard in the present case until the case is reversed on appeal. Thus, we have addressed the issue the Ninth Circuit did not reach.