**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2380
_____

CLAUDE TOWNSEND,
                           Appellant

v.

SECRETARY UNITED STATES DEPARTMENT OF HEALTH AND HUMAN
SERVICES; COMMISSIONER SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-12-cv-02158)
District Judge:  Honorable Peter G. Sheridan
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 6, 2014
Before:  SMITH, GARTH and ROTH, Circuit Judges

(Filed: January 15, 2014)
_____

OPINION
_____

PER CURIAM

Claude Townsend appeals from the District Court's judgment affirming the

Commissioner of Social Security's denial of his application for disability insurance

benefits.  For the reasons stated below, we will vacate and remand the matter.

Townsend was a 35-year-old bus driver for the New Jersey Transit Corporation when he was injured on the job in January 2008. He was out on disability leave until he was fired (for unrelated reasons) on August 28, 2008. Townsend filed for disability benefits alleging disability, as of that date, due to shoulder impingement syndrome and bilateral carpel tunnel syndrome. His application was denied both initially and upon reconsideration. Pursuant to Townsend's request, a hearing was held before an ALJ in November 2010. The ALJ rendered a decision concluding that Townsend was not entitled to benefits. Townsend sought review in the District Court, which affirmed the Commissioner's decision, and this appeal ensued.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the Commissioner's legal conclusions and review the ALJ's factual findings to determine whether they are supported by substantial evidence. Allen v. Barnhart, 417 F.3d 396, 398 (3d Cir. 2005). The substantial evidence standard is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted).

A claimant suffers from a "disability" as defined in the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applied the five-step sequential evaluation

2

process for determining whether a claimant is disabled, pursuant to 20 C.F.R. § 404.1520. In doing so, the ALJ considered Townsend's physical and psychiatric examinations, medical treatment, and testimony. The ALJ determined that Townsend had a severe impairment of carpel tunnel syndrome, which limited his ability to perform basic work activities, but that he retained the residual functional capacity to perform light work. In so concluding, the ALJ determined Townsend's statements regarding the intensity, persistence, and limiting effects of the pain associated with his carpel tunnel syndrome to be less than fully credible.

On appeal, Townsend challenged the ALJ's determination, alleging that he was disabled for a closed period of disability -- August 28, 2008, until December 14, 2009. "In a 'closed period' case, the decision maker determines [whether] a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." Pickett v. Bowen, 833 F.2d 288, 289 n.1 (11th Cir. 1987); see also Myers v. Richardson, 471 F.2d 1265, 1267 (6th Cir. 1972) (recognizing that a closed period of benefits may be awarded). A review of the hearing transcript indicates that the ALJ stated his intent to determine whether Townsend was entitled to benefits for this closed period of disability. See A.R. at 30-32. Nevertheless, the ALJ considered the disability period from August 28, 2008, until September 14, 2010, when Townsend resumed employment as a driver for disabled and handicapped people. Townsend had acknowledged that he was discharged from medical care with respect to all of his physical ailments on December 14, 2009, and "had residual functional capacity to

3

perform light duty work" thereafter. Thus, the relevant disability period, which we conclude the ALJ should have considered, is from the onset date until that time, a period of approximately 16 months.[1]

Having limited consideration to the 16-month closed period of disability, we conclude that there is insufficient evidence to sustain the ALJ's decision. The ALJ listed sections of the record to support his credibility determination, a significant portion of which is outside the relevant closed disability period.[2] First, he cited to a report from Chirag Shukla, M.D., indicating that Townsend was complaining of bilateral hand numbness, but had full strength in all of his extremities. This evidence is not substantial because the report was dated April 10, 2008, four months *prior* to the onset date of disability. The ALJ also cited a December 14, 2009 report by Daniel Kawash, a physician's assistant, which indicates that surgery had completely resolved the carpal tunnel syndrome in his left hand, allowing Townsend to "fully flex and extend all digits; his wrist motion was full." The timing of this evidence, which coincides with the end of the closed disability period and the point at which Townsend concedes that he was capable of performing light residual work, actually supports his claim. The ALJ relied on

---

[1] We note that, despite being directed to brief the issue, the Commissioner did not address in her brief whether the ALJ erred in not considering this closed period of disability benefits.

[2] The ALJ may consider evidence outside the disability period that is probative. However, the evidence cited here by the ALJ does not undermine Townsend's contention that he had a disability during the relevant period.

another report from February 2010, in which Perry Shaw, M.D., indicates that, despite allegations of "stress and anxiety," Townsend was found to have "no mental disorder." Again, this report was made after the closed period of disability.[3]

There is a significant lack of support for the remaining evidence cited by the ALJ. The ALJ based his decision, in part, on his conclusion that Townsend continued to work after his accident until his discharge. This finding is belied by the record. At the hearing, Townsend testified that he was out on disability after the accident and was fired before he could resume work as a bus driver. A.R. at 25-26. The ALJ also cited a note from Thomas Bills, M.D., dated December 16, 2008, which indicates that Townsend had right shoulder impingement, but that the cortisone injections had not offered him relief. It is unclear why this evidence necessarily undermines Townsend's credibility. The fact that Townsend was continually seeking relief for the pain actually lends credibility to his complaints. Carradine v. Barnhart, 360 F.3d 751, 756 (7th Cir. 2004) (noting that a claimant's "constant quest for medical treatment and pain relief refutes" an adverse credibility finding) (citation omitted). Moreover, it ignores Dr. Bills' subsequent note of March 12, 2009 (A.R. at 205), indicating that Townsend had rotator cuff impingement and tendinitis, for which the doctor scheduled surgery. See Plummer v. Apfel, 186 F.3d

---

[3] We note further that Dr. Shaw's finding of "no mental disorder" does not necessarily undermine Townsend's complaints that he suffered from stress and anxiety. Indeed, Dr. Shaw's report indicates that Townsend was "credible and he did not appear to be exaggerating or malingering." A.R. at 313.

422, 429 (3d Cir. 1999) ("The ALJ must consider all the evidence and give some reason for discounting the evidence [he] rejects.").

Next, the ALJ indicated that, when seen by Dr. Bills in June 2009, "claimant was noted to have some tingling and numbness in his hands; although he had 'excellent range of motion,' and 'full functional motion in his shoulder.' He was noted to have some 'functional strength deficits.'" Again, it is unclear how this undermines Townsend's credibility. The note indicates that Townsend had healed from his shoulder surgery (which had been performed in March 2009) and had full range of motion in his *shoulder*. While this supports the conclusion that Townsend was no longer limited by his shoulder, it does not address the bilateral carpal tunnel syndrome. Indeed, Dr. Bills indicates in the report that he "encouraged [Townsend] to move forward with th[e] evaluation for his carpal tunnel syndrome with Dr. Ford and he is going to continue with self-directed exercise. He will remain out of work in the interim." A.R. at 253. Townsend had carpal tunnel release surgery on his right hand several weeks later.[4]

The remaining report on which the ALJ relied to discredit Townsend was prepared by Dr. Ronald Bagner on behalf of the SSA on August 12, 2009. Dr. Bagner found that Townsend could move about without difficulty, dress/undress himself, sit comfortably, and heel-and-toe walk. He noted that the shoulder showed a normal range of movement,

---

[4] Townsend's efforts to obtain Worker's Compensation Benefits for his injury were ongoing at that time. Dr. Edward J. Ford indicated in his report that Townsend had consented to the surgery despite not obtaining court permission because of the persistence of the symptoms. A.R. at 295.

and that the left grip was rated a 5/5. He could not assess Townsend's right hand because it was in a brace, as a result of carpal tunnel release surgery performed two weeks prior. Although this report supports the ALJ's conclusion, it is countered by the June 23, 2009 report of Dr. Edward J. Ford, the treating physician, which indicated that while the carpal tunnel in the left hand was moderate, it did require surgery. See Plummer, 186 F.3d at 429 ("Treating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'") (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)). Of course, the ALJ may determine, after weighing the evidence, that the consulting physician's opinion is entitled to more weight than the treating physician's. See Jones v. Sullivan, 954 F.2d 125, 128-29 (3d Cir. 1991). The ALJ, however, failed to provide "good reasons" for discounting Ford's report. See 20 C.F.R. § 404.1527(c)(2); see also Punzio v. Astrue, 630 F.3d 704, 710 (7th Cir. 2011) ("whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision."). Moreover, the fact that Townsend had the surgery a few months later, had almost instant relief, and acknowledged that he was capable of light residual work immediately thereafter, further supports his credibility.

The ALJ merely listed the portions of the record on which he relied; he did not explain their significance, or link them to his conclusion that Townsend was not credible. With the exception of Dr. Bagner's report, this evidence does not clearly support the credibility finding. See Green v. Schweiker, 749 F.2d 1066, 1070 (3d Cir. 1984) (if the

claimant's subjective complaints are substantiated by medical evidence, the ALJ may not conclude that the witness lacks credibility without contradictory medical evidence).[5] Moreover, it is unclear whether Dr. Bagner's report, standing alone, would have led the ALJ to the same conclusion. See Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("A single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence."). In light of the evidence in the record, we conclude that the ALJ erred in not considering whether Townsend was entitled to a closed period of disability, and that substantial evidence does not adequately support the ALJ's credibility finding for the relevant time period.

For the foregoing reasons, the District Court's order affirming the ALJ's decision will be vacated, and the case remanded to the District Court with directions to remand to the Commissioner for additional proceedings consistent with this opinion. On remand, the ALJ shall consider whether Townsend was disabled during the closed period from August 28, 2008, until December 14, 2009, and is thus entitled to disability benefits.

---

[5] The ALJ also found that Townsend's testimony was inconsistent with the record evidence; however, he failed to point to any portion of the testimony to support his decision. A review of the transcript reveals that the ALJ elicited very little testimony from Townsend, who was proceeding pro se, regarding his symptoms and limitations. Townsend's testimony – to the extent it was his own – does not appear inconsistent with his claim for the closed period of disability. A.R. at 30-32.